## AFFIDAVIT

I, Adam L. Krob, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Special Agent of the Federal Bureau of Investigation, and have been since 2004. I am currently assigned to the Denver FBI Child Exploitation Task Force. I have received training in Crimes Against Children investigations and am familiar with child pornography investigations and the Innocent Images National Initiative. As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A. I have received training and instruction in the field of investigation of child pornography and have had the opportunity to participate in investigations relating to the sexual exploitation of children. As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).

2. This affidavit is made pursuant to Title 18, United States Code, Section 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), in support of an application for a warrant to search the Dropbox account(s) described in Attachment A (hereinafter "SUBJECT ACCOUNT") and all content found therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251(a), 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A are present at the location described.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

5. This investigation concerns alleged violations of 18 U.S.C. Sections 2251, 2252 and 2252A, relating to material involving the sexual exploitation of minors.

6. 18 U.S.C. Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing or coercing a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

7. 18 U.S.C. Sections 2252 and 2252A prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them as well as transporting, receiving, distributing or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

## DEFINITIONS

8. The following definitions apply to this Affidavit and Attachment B to this Affidavit.

9. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

10. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image See 18 U.S.C. § 2256(5).

11. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

12. "IP Address" means Internet Protocol address, which is a unique numeric address used by computers on the Internet.  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

13. "Internet" means a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14. "Bulletin Board" means an Internet-based website that is either secured (accessible with a password) or unsecured, and provides members with the ability to view postings by other members and make postings themselves.  Postings can contain text messages, still images, video images, or web addresses that direct other members to specific content the poster wishes.  Bulletin boards are also referred to as "Internet forums" or "message boards."  A "post" or "posting" is a single message posted by a user.  Users of a bulletin board may post messages in reply to a post.  A message "thread," often labeled a "topic," refers to a linked series of posts and reply messages.  Message threads or topics often contain a title, which is generally selected by the user who posted the first message of the thread.  Bulletin boards often also provide the ability for members to communicate on a one-to-one basis through "private messages."  Private messages are similar to e-mail messages that are sent between two members of a bulletin board.  They are accessible only by the users who sent/received such a message, or by the bulletin board administrator.

15. In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

## BACKGROUND REGARDING THE INTERNET

16. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions, including satellite.  Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even

when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use an e-mail account provided by their ISP or they can use the Internet to connect to web-based e-mail services (such as those provided by America Online and Microsoft Hotmail) to send and receive e-mail. Web-based e-mail services provide e-mail accounts that may be accessed from any computer that has access to the World Wide Web. In addition, the individual can access websites using web browsers (computer programs that permit users to navigate through pages of information that are stored on remote computers, such as Microsoft's Internet Explorer and Netscape's Navigator) to view or download content, or make purchases. The Internet may also be used to access e-groups (websites that require users to subscribe, and permit subscribers to post messages, chat electronically, post and transfer files and share information), newsgroups (that permit posting of e-mail messages regarding specific topics) and video conferencing.

17. **Internet Service Providers ("ISPs"):**

    A. ISPs are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password.

    B. ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," see 18 U.S.C. § 2510(17), and the provider of such a service is an "electronic communications service." An "electronic communications service," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." 18 U.S.C. § 2711(2).

18. **Internet Protocol Address ("IP Address")**: Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP

address is a series of numbers separated by periods; an example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISPs employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISPs, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer. A modem is an electronic device that allows one computer to communicate with another.

## DROPBOX, INC. AND ELECTRONIC EVIDENCE

19. In my training and experience, I have learned that Dropbox, Inc. (hereinafter "Provider") refers to an online storage company on the Internet, accessed from a computer or electronic storage device that offers its users a medium for storing files. As an example, online storage companies such as Dropbox make it possible for the user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage devices. Dropbox is an "offsite" storage medium for data that can be viewed at any time from any device capable of accessing the Internet. Users can store their files on Dropbox and avoid having the files appear on their computer. Anyone searching an individual's computer that utilizes Dropbox would not be able to view these files if the user opted only to store them at an offsite facility such as Dropbox. These are often viewed as advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

20. Dropbox provides a variety of online services, including online storage access, to the general public. Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com. Subscribers obtain a Dropbox account by registering with an e-mail address. During the registration process, Dropbox asks subscribers to provide basic personal identifying information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account numbers).

21. When the subscriber transfers a file to a Dropbox account, the transfer is initiated at the user's computer or other electronic device, transferred via the Internet to the Dropbox servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account. Transmission of these files from Dropbox servers can also include transmission to and from e-mail accounts, peer-to-peer file sharing sites, the open Internet, and even other electronic storage devices such as thumb drives. If the subscriber does not delete the content, the files can remain on Dropbox servers indefinitely. Even if the subscriber deletes his or her account, it may continue to be available on the Dropbox servers for a certain period of time.

22. Online storage providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, online storage providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

23. In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

24. In the electronic world, it is possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an email or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren ":)" to convey a smile or agreement) to discuss matters. Actual review of the contents of a photo-sharing account by law enforcement familiar with the identified criminal activity is necessary to find all relevant evidence within the account.

25. Collectors and distributors of child pornography often use online resources to retrieve, share, and store child pornography. Non-pornographic, seemingly innocuous images of minors are often found in accounts that also contain child pornography, or that is used to communicate with others about sexual activity or interest in children. Such images are useful in attempting to identify actual minors depicted in child pornography images found during the execution of a search warrant. In certain cases, such images may also assist in determining the origins of a particular child pornography image or series of images. Further, the online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. These online storage accounts are often free but can involve a charge. A subscriber assigned a free online storage account frequently can set up such accounts by providing limited identifying information. Any information provided is frequently fictitious in an attempt to preserve the anonymity of the user. Consequently, even if it is known that a collector or distributor of child pornography is a subscriber of a free online storage service, the service provider frequently will have no records in that subscriber's name. Instead, the online service will only be able to identify files, including child pornography, that are associated with a "login," or unique, user-created identity the subscriber uses to "log on" to the online service. Such an online storage account is particularly useful to a collector or distributor of child pornography. Such a subscriber can collect, store, view and distribute electronic images, including child pornography, directly from the online service. Consequently, the illegal files have minimal contact with the subscriber's home computer. The subscriber can also manipulate the files on an online storage service from any computer connected to the Internet. Nonetheless, evidence of an online storage account is often found on a home computer of a user subscribing to such a service. Evidence of an online storage account may take the form of passwords located in encrypted, archived[1], or other files on the user's home computer. Other evidence can also be found through unique software that may exist on a user's home computer that has been developed by the online storage service. This unique software will frequently contain evidence not only of the existence of such accounts, but the login and password

## INVESTIGATION AND SUBJECT OF SEARCH WARRANT

## INVESTIGATION

26. The National Center for Missing and Exploited Children ("NCMEC") is an organization that, among other things, tracks missing and exploited children, and serves as a repository for information about child pornography. Companies that suspect child pornography has been stored or transmitted on their systems can report that information to NCMEC in a cybertip. To make such a report, a company providing services on the internet ("ISP") can go to an online portal that NCMEC has set up for the submission of these tips. The

---

[1] Archive files are files which generally contain other files in a compressed format. Thus, Archive files may be thought of as containers containing other files. Archive files are commonly referred to as "zip" or "zipped" files.

ISP then can provide to NCMEC information about the child exploitation activity it believes has occurred, including the incident type, the incident time, any screen or user names associated with the activity, any IP address or port numbers it captured, as well as other information it may have collected in connection with the suspected criminal activity.  Other than the incident type and incident time, the remainder of the information the ISP provides is voluntary and undertaken at the initiative of the reporting ISP.  The ISP may also upload to NCMEC any files it collected in connection with the activity.  The ISP may or may not independently view the content of the files it uploads.  NCMEC does not review the content of these uploaded files.  Using publicly available search tools, NCMEC then attempts to locate where the activity occurred based on the information the ISP provides such as IP addresses.  NCMEC then packages the information from the ISP along with any additional information it has, such as previous related cybertips, and sends it to law enforcement in the jurisdiction where the activity is thought to have occurred.

27. On or about October 6, 2017, Google reported to NCMEC via cybertip 24768955 that two files containing child pornography were uploaded on October 6, 2017 from IP address 75.171.146.240; Google viewed the entire file of contents of both uploaded files.  Google reported to NCMEC that the Google user who uploaded these two child pornography files was Scott Garland, and provided an associated telephone number and e-mail address for the user.  On or about December 21, 2018, Google reported to NCMEC via cybertip 44514621 that two files containing child pornography were uploaded to Google photos infrastructure by Google user Scott Garland, and provided an associated telephone number and e-mail address for the user.  FBI Denver investigated the cybertips and identified a potential subject as Scott Garland, year of birth 1964.

28. On or about April 30, 2019, and again, on or about May 1, 2019, your Affiant and other investigating agents interviewed Scott Garland ("Garland"), year of birth 1964.  Garland admitted during the interviews to possession and distribution of child pornography and consented to a search of his electronic devices, and further consented to allow the FBI to assume certain online identities Garland possessed, including his Telegram 2 account @incestperv and his Dropbox account associated with email garland75201@gmail.com; both the consent to search and consent to assume online identities were documented via FBI paperwork with Garland.  Garland also stated during his interviews with your Affiant that he used Dropbox for the purposes of storing child pornography.

29. An initial review of Garland's devices and online identities by your Affiant indicated Garland had approximately 15 videos and 7 images of child pornography on his Dropbox account, which was associated with username/email address garland75201@gmail.com.

30. Garland stated in his interviews to me and other investigating agents that he preferred to masturbate to child pornography that depicted babies and young toddlers.  Garland also stated that he used e-mail address garland75201@gmail.com,

31. On or about June 14, 2019 another FBI agent submitted a preservation letter to Dropbox.

## EVIDENCE

---

2 According to information regarding Telegram available on the Internet: "Telegram is a messaging app with a focus on speed and security… You can use Telegram on all your devices at the same time — your messages sync seamlessly across any number of your phones, tablets or computers. With Telegram, you can send messages, photos, videos and files of any type (doc, zip, mp3, etc), as well as create groups for up to 200,000 people or channels for broadcasting to unlimited audiences. You can write to your phone contacts and find people by their usernames. As a result, Telegram is like SMS and email combined — and can take care of all your personal or business messaging needs. In addition to this, we support end-to-end encrypted voice calls." Based on my training and experience, Telegram is service that is facilitated by cellular tower networks and/or the Internet.

32. Your Affiant knows from training and experience that digital evidence is not limited to computers. Your Affiant has been involved in cases where persons with an interest in material depicting the sexual exploitation of children can access the Internet, display images of child pornography, and communicate with other individuals with the same interest using digital storage devices to include cellular telephones, e-mail devices, and personal digital assistants. These devices are frequently found to contain chat communications in the form of short message service (SMS) messages and other mobile messaging services which utilize the devices' Internet connection and data network access. The content of these communications, which may contain data aside from the enveloping communication, can be stored using online storage services like Dropbox.

33. Your Affiant knows from training and experience that persons trading in, receiving, transporting, distributing, or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual exploitation of children often share content with others through online storage services like Dropbox. The content stored in an online storage account could tend to identify the origin of images contained therein as well as provide evidence of a person's interest in child pornography or child sexual exploitation.

34. Your Affiant knows from training and experience that the complete contents of online storage accounts such as those provided by Dropbox may be important to establishing the actual user who has dominion and control of the account at a given time. Online storage accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider. They may also be used by multiple people. Therefore, the content of a given account, including the e-mail accounts that send messages to a given account often provides important evidence regarding the actual user's dominion and control of an account.

35. Based upon training and experience, your Affiant knows that persons engaged in online activities involving a sexual interest in children or child erotica are also often involved in online activities involving the production and possession of child pornography. Likewise, your Affiant knows from training and experience that persons involved in online activities involving the production and possession of child pornography are often involved in online activities involving the production and possession of child erotica.

36. This application seeks a warrant to search all responsive records and information under the control of Dropbox, Inc., a provider subject to the jurisdiction of this court, regardless of where Dropbox, Inc. has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Dropbox, Inc.'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. [3]

**CONCLUSION**

37. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

---

[3] It is possible that Dropbox, Inc. stores some portion of the information sought outside of the United States. In Microsoft Corp. v. United States, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Dropbox, Inc.. The government also seeks the disclosure of the physical location or locations where the information is stored.

38. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of Title 18, United States Code, Sections 2251(a), 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5) may be located within the Dropbox accounts described in Attachment A.

39. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

                                           *s/ Adam L. Krob*
                                           Adam L. Krob, Special Agent
                                           Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this __21st__ day of __June__ 2019

_____
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Patricia Davies, Assistant United States Attorney.